United States District Court
Southern District of Texas
**ENTERED**
April 23, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| WILLIE POWELLS, § | |
| § | |
| Plaintiff, § | |
| v. § | CIVIL ACTION NO. H-23-3790 |
| § | |
| 1600 WEST LOOP SOUTH, LLC, *et al.*, § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND ORDER**

Willie Powells, an attorney, sued 1600 West Loop South, LLC, Hospitality Headquarters, Inc. and Landry's, LLC, doing business as Post Oak Hotel (collectively "Post Oak"). He asserts claims for "race and/or sex" discrimination and intentional infliction of emotional distress. (Docket Entry No. 12). Powells alleges that he was invited to a business meeting at "H Bar," a bar and restaurant inside the Post Oak Hotel. (Docket Entry No. 12 at ¶ 14). Powells attended the meeting dressed in a business suit with a baseball cap bearing the logo of some legal conference. (*Id.* at ¶¶ 15, 19). Powells alleges that when he sat down with the person he was meeting, an employee approached and demanded that Powells remove his baseball cap or leave. (*Id.* at ¶ 17). Powells alleges he was the only Black person in the bar and that white patrons wearing cowboy hats were not asked to remove their headcovers. (*Id.* at ¶ 16). Powells asked to speak to a manager, who told him that "a cowboy hat is not a hat" and gave no other explanation about the hotel's dress code. (*Id.* at ¶ 21). Powells left the bar, and then filed this suit. Post Oak moves to dismiss. (Docket Entry No. 14).

The court has reviewed the motions, record, and applicable law. Based on this review, the court grants Post Oak's motion to dismiss the claim for intentional infliction of emotional distress and denies the motion as to the § 1981 claim. The reasons are set out below.

I.  **The Legal Standard for Dismissal**

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

To withstand a Rule 12(b)(6) motion, a complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Lincoln v. Turner*, 874 F.3d 833, 839 (5th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir.

2019) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (alterations omitted) (quoting *Twombly*, 550 U.S. at 558).

A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

## II. Analysis

### A. Section 1981

Section 1981 states that:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). To state a § 1981 claim, a plaintiff must allege facts showing that he or she was the subject of intentional discrimination. *See Coleman v. Houston Independent School Dist.*, 113 F.3d 528, 533 (5th Cir. 1997) ("[A] cause of action for racial discrimination in the making and enforcement of contracts, under § 1981, requires the plaintiff to demonstrate intentional discrimination."). A claim that a policy disproportionately impacts a protected class is not actionable under § 1981. *See National Ass'n of Government Employees v. City Public Service Bd.*, 40 F.3d 698, 715 (5th Cir. 1994) (citing *Washington v. Davis,* 426 U.S. 229, 238–240 (1976)).

3

"Plaintiffs are required . . . under section 1981, to demonstrate intentional discrimination; mere disparate impact will not suffice." *Id.*

"In a commercial context, in order to establish a prima facie case under § 1981, the plaintiff must show that (1) he or she is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288–89 (5th Cir. 2004). Post Oak argues that Powells's § 1981 claim fails because he has not suggested discriminatory intent, not shown the existence of a contractual relationship or entitlement to benefits, not shown that the employees in question were agents of Post Oak, and not alleged but-for causation.

Post Oak first argues that Powells has not alleged facts showing that Post Oak inconsistently enforced its policy about acceptable headwear in the hotel bar, and that such an "allegation would still not be sufficient to show discriminatory intent." (Docket Entry No. 14 at 9). Post Oak relies on an unpublished Seventh Circuit case, *Onyango v. Nick Howard, LLC*, 607 F. App'x 552 (7th Cir. 2015), which found that an allegation that night club bouncers "selectively enforce[ed] nonarticulable dress codes while making exceptions for rappers and drug dealers" was "too vague" to sustain a § 1981 case. *Id.* at 553–54. The allegations here are more specific and less vague. First, Powells alleged that the dress code required patrons to remove their hats. (Docket Entry No. 12 at ¶ 17). Second, he alleged that white patrons were allowed to continue wearing one type of hat—a cowboy hat—while he, a black patron, was told he must remove his baseball cap. (*Id.* at ¶¶ 16–17). At this pleading stage, it is not necessary for him to anticipate and deny arguments about why the distinction is not discriminatory. *See, e.g.*, *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204 (5th Cir. 2021), *as revised* (Nov. 26, 2021). He has alleged that black patrons were

4

turned away under a dress code while white patrons are not. This alleges discriminatory intent. *See Dunaway v. Cowboys Nightlife, Inc.*, 436 F. App'x 386, 395 (5th Cir. 2011).

Post Oak also argues that there is no discriminatory intent because cowboy hats do not violate the restaurant's dress code while baseball caps do. (Docket Entry No. 14 at 10). Post Oak also claims that the dress code is "a non-racial explanation" for the restaurant's conduct, defeating "but-for" causation. (*Id.* at 14). Powells alleges that the restaurant had a "no hats" policy and that he was told "a cowboy hat is not a hat" while a baseball cap was a hat. (Docket Entry No. 12 at ¶ 21). He alleges that the dress code was selectively applied as a pretext for refusing service on the basis of race. At this stage, without discovery on the actual dress code policy, dismissal is inappropriate. If the dress code policy is "no hats," deciding that cowboy hats are not hats—when "hat" is in the name itself—may be a pretext for discrimination. At this stage, Powells has sufficiently alleged discriminatory intent and but-for causation.

Post Oak acknowledges that "Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship[.]" (Docket Entry No. 14 at 11 (quoting *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 475–76 (2006)). Nevertheless, it argues that Powells cannot bring a claim under § 1981 because "Powells did not actually purchase a drink or food . . . [or] pa[y] an entry fee" he "fails to sufficiently allege that a contractual relationship was established[.]" (Docket Entry No. 14 at 11). But Powells does not need to establish a contractual relationship in order to state a claim. He only needs to allege that he attempted to enter into a contractual relationship and was prevented from doing so.

"[D]ining at a restaurant generally involves a contractual relationship that continues over the course of the meal and entitles the customer to benefits in addition to the meal purchased," including an atmosphere that a reasonable customer would expect, and a certain level of service.

5

*Arguello v. Conoco, Inc.*, 330 F.3d 355 (5th Cir. 2003). "[W]hen a merchant denies service or outright refuses to engage in business with a consumer attempting to contract with the merchant, that is a violation of § 1981." *Causey*, 394 F.3d at 290 (citing *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 752 (5th Cir. 2001)). Powells's amended complaint states that he entered the restaurant and "intended to order some food." (Docket Entry No. 12 at ¶ 14). Accepting Powells's allegations as true for the purposes of the motion to dismiss, this is sufficient to establish an attempt to contract with the restaurant and to give rise to liability under § 1981.

Post Oak also argues that even if Powells had sufficiently pleaded a contractual relationship, "his violation of the dress code policy would have terminated the contractual relationship[.]" (Docket Entry No. 14 at 12). Post Oak cites to *Dunaway v. Cowboys Nightlife, Inc.*, 436 F. App'x 386 (5th Cir. 2011), in which patrons of a night club brought suit after they were denied entry or removed from the club, for the proposition that violating a dress code terminates the contractual relationship. This misreads *Dunaway* in two ways. First, the dress code in *Dunaway* was not raised as proof of termination of the contractual relationship, but rather as a non-discriminatory reason for the night club's conduct. Second, the *Dunaway* court held that because there was a dispute of fact as to whether the dress code policy was a pretext, summary judgment could not be granted. *Id.* at 398. At the motion to dismiss stage, pleading that a dress code was enforced in an allegedly discriminatory manner so as to preclude the plaintiff from obtaining the bar service he sought does not end the suit.

Finally, Post Oak argues that Powells has not alleged that the individuals who denied him service were agents of Post Oak. Post Oak again cites to *Onyango*, in which the plaintiffs were the subject of racist remarks by a *patron* of the defendant, not an employee. *Onyango*, 607 Fed. App'x. at 553. It is true that in such a situation, the plaintiff would have an uphill battle to prove

that the patron was an agent of the defendant. But here, Powells has plainly alleged that employees of Post Oak denied him service. Under Texas law, it is well accepted that "an employer is vicariously liable for the negligence of an agent or employee acting within the scope of his or her agency or employment." *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998). Post Oak has pointed to no authority beyond *Onyango*, which is distinguishable, to support its argument that Powells has insufficiently alleged that Post Oak is liable for the alleged conduct of its server and manager. (Docket Entry No. 14 at 13).

Powells has sufficiently pleaded a claim of discrimination under § 1981. Post Oak's motion to dismiss is denied on this count.

### B. Intentional Inflection of Emotional Distress

To prevail on a claim of intentional infliction of emotional distress under Texas law, a plaintiff must show that (1) the defendant "acted intentionally or recklessly; (2) its conduct was extreme and outrageous; (3) its actions caused [the plaintiff] emotional distress; and (4) the emotional distress was severe." *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006). Intentional infliction of emotional distress is "a 'gap filler' tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004) (citing *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998)).

"[I]f the gravamen of a plaintiff's complaint is the type of wrong that the statutory remedy was meant to cover, a plaintiff cannot maintain an intentional infliction [of emotional distress] claim regardless of whether he or she succeeds on, or even makes, a statutory claim." *Johnson v. Blue Cross/Blue Shield of Texas*, 375 F. Supp. 2d 545, 549 (N.D. Tex. 2005) (quoting *Hoffmann-*

*La Roche Inc.*, 144 S.W.3d at 448). Claims for intentional infliction of emotional distress have been denied when the crux of the claim implicates the Age Discrimination in Employment Act, *Swafford v. Bank of Am. Corp.*, 401 F. Supp. 2d 761 (S.D. Tex. 2005), as well as Title VII, *Johnson*, 375 F. Supp. 2d 545.

Powells's complaint is the type covered by a statute, § 1981, and his claim does not require a "gap filler." Even if it did, he has not alleged conduct so extreme or outrageous as to meet the standard for intentional infliction of emotional distress—discriminatory conduct alone does not suffice. *See, e.g.*, *Swafford*, 401 F. Supp. 2d at 765 ("vulgar joke-telling, verbal abuse, unfair evaluations, and unfair and discriminatory job termination, did not, as a matter of law, rise to the level of extreme or outrageous conduct.").

### III.  Conclusion

Post Oak's motion to dismiss, (Docket Entry No. 14) is denied as to the § 1981 claim and granted as to the claim for intentional infliction of emotional distress.

SIGNED on April 23, 2024, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge