United States District Court
Southern District of Texas
**ENTERED**
January 27, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| WILLIE POWELLS, § | |
| § | |
| Plaintiff, § | |
| v. § | CIVIL ACTION NO. 23-3790 |
| § | |
| 1600 WEST LOOP SOUTH, LLC, § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND OPINION**

Willie Powells, an attorney, sued 1600 West Loop South, LLC, which owns and operates the five-star Post Oak Hotel and its five-star H-Bar restaurant and bar. Powells asserts claims for "race and/or sex" discrimination under 42 U.S.C. § 1981. (Docket Entry No. 12). Powells alleges that he was invited to meet another individual at the H-Bar to discuss business. (Docket Entry No. 12 at ¶ 14). Powells arrived at the bar dressed in a business suit, a white button-down shirt, and a baseball cap bearing the logo of a law-sponsored conference. (*Id.* at ¶¶ 15, 19). Powells alleges that when he sat down at a table with the person he was meeting, an employee asked him to remove his baseball cap. (*Id.* at ¶ 17). Powells alleges that he was the only Black person in the bar. (*Id.* ¶ 15). He alleges that there were white patrons wearing cowboy hats who were not asked to remove their headwear. (*Id.* at ¶ 16). Powells asked to speak to a manager, who told him that "a cowboy hat is not a hat" under the hotel dress code. (*Id.* at ¶ 21). Powells left the bar.

Powell's causes of action are all based on the allegation that the hotel discriminated against him on the basis of his race. Post Oak moved to dismiss, (Docket Entry No. 14). The court granted the motion as to Powells's emotional distress claim but denied it as to the discrimination claim

under § 1981. (Docket Entry No. 21). After discovery, the hotel moved for summary judgment as to the remaining claim. Based on the motion, summary judgment record, and applicable law, the court grants Post Oak's motion for summary judgment and, by separate order, enters final judgment. The reasons are set out below.

I.  Background

Powells asserts that on March 8, 2023, he was "the only African-American in the bar" at the Post Oak Hotel. (Docket Entry No. 12 ¶ 15). Powells was wearing a fabric cap with a stiff bill projecting in front, that he alleges was "from a trial lawyers CLE and not a baseball cap." (*Id*. ¶ 19). The photo included in the complaint is of a baseball cap with an embroidered logo across the front of the cap. (*Id*.). Powells describes his other clothing as "business attire," including a suit and a button-down shirt. (*Id*. ¶ 15). Powells alleges that there was a large group of Caucasian men and women at the bar, including individuals wearing "some kind of hat [] including cowboy hats." (*Id*. ¶ 16). He alleges that several people at this same table were dressed in casual attire, including "jeans, worn out jeans with holes, and frayed jean shorts." (*Id*.).

Powells alleges that an H-Bar employee asked him to take off his baseball cap. (*Id*. ¶ 17). He alleges that the employee's demeanor was "abrupt and rude." (*Id*.). Powells pointed out to the employee that other patrons in the bar area were also wearing hats. (*Id*.). Powells then left the H-Bar. (*Id*. ¶ 18). He asked to speak with the front-office manager of the Post Oak Hotel and waited until the manager could meet with him. (*Id*. ¶ 20). Powells alleges that after he described the situation, the manager, Jean-Pierre Salazar, told him that under the hotel's written dress code, baseball caps were not allowed, but "a cowboy hat is not a hat" and was not forbidden. (*Id*. ¶ 21). Salazar "confirmed that Powells would have to leave" if he refused to take off his baseball cap. (*Id*.). Powells asked Salazar for a document describing the hats portion of the dress code, but

Salazar told him that there was no such document. (*Id*.). In discovery, a written dress code used by employees was produced. (Docket Entry No. 36-1). The document consists of pictures of allowed and disallowed attire, including a man wearing a baseball cap with a big red "X" through it, and men and women wearing fedoras, broad brimmed hats, and a cowboy-type hat marked with big green checks. (*Id*. at 12).

Powells asserts that after this conversation, he retrieved his car from the valet parking and left. (Docket Entry No. 12 ¶ 22). The next day, Powells sent Salazar an "evidence retention" and "notice of claim" letter, clear precursors to litigation. (*Id*. ¶ 23). Powells alleges that he "suffered great shame, anxiety, depression, and other mental anguish due to these events," which have caused "at least nausea, headaches and loss of sleep." (*Id*. ¶ 24). He alleges that he "would like to go to the Post Oak Hotel to eat and drink in the future and be treated as similarly situated Caucasians." (*Id*.).

Post Oak moved to dismiss. (Docket Entry No. 14). This court denied the motion as to Powells's § 1981 claim, based on his allegations that: (1) the Post Oak dress code required patrons to remove their hats; (2) that white patrons could continue wearing one type of hat—a cowboy hat—while he, a Black patron, was told he must remove his baseball cap; and (3) as a result of this different standard in code-compliant headwear, Black patrons were turned away for wearing a certain kind of headwear while white patrons were allowed to wear a different type of headwear. (*Id*. at 4-5). The court found that these allegations were sufficient to infer both discriminatory intent and but-for causation. (*Id*. at 5). The court also found that Powells, who alleged that he intended to order food or drink from the H-Bar but was unable to do so, had sufficiently established an attempt to contract with the restaurant to state a § 1981claim. (*Id*. at 6). Post Oak has now moved for summary judgment. (Docket Entry No. 32).

3

## II. The Legal Standard

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting FED. R. CIV. P. 56(a)). "A fact is material if it 'might affect the outcome of the suit.'" *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019), *as revised* (Jan. 25, 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). When considering a motion for summary judgment, the court "must consider all facts and evidence in the light most favorable to the nonmoving party" and "must draw all reasonable inferences in favor of the nonmoving party." *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and pointing to record evidence demonstrating that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* FED. R. CIV. P. 56(c). "When 'the non-movant bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is a dispute of material fact warranting trial.'" *MDK S.R.L. v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (alteration adopted) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)).

"Once the moving party has initially shown that there is an absence of evidence to support the non-moving party's cause, the non-movant must come forward with specific facts showing a

4

genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quotation marks and quoting reference omitted). "[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 368 (5th Cir. 2021) (quotation marks and quoting reference omitted). Rather, the nonmovant "must identify specific evidence in the record and articulate the precise manner in which that evidence supports [its] claim." *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (alteration adopted) (quotation marks and quoting reference omitted).

The movant is entitled to judgment as a matter of law when "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp.*, 477 U.S. at 323. But "[i]f 'reasonable minds could differ' on 'the import of the evidence,' a court must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson*, 477 U.S. at 250–51).

### III.   Threshold Matters

Powells moves to strike Post Oak's motion for summary judgment because it is eight pages over the limits, is missing certain items required by this court's local rules, and because Post Oak filed attachments to its motion after the dispositive motion deadline. (Docket Entry No. 45 at 1). Motions to strike are used to attack "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" in a pleading. Fed. R. Civ. P. 12(f). Such motions are viewed with disfavor and are rarely granted. *See* 5C Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1380 (3d. ed.). This court prefer to reach decisions on the merits, not on the basis of such technical deficiencies. The court denies the motion to strike Post Oak's motion for summary judgment.

IV.     Analysis

Section 1981 states that:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

"Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). Under § 1981, "[p]laintiffs can show discrimination in two ways: disparate treatment and disparate impact." *Abdallah v. Mesa Air Grp., Inc.*, 83 F.4th 1006, 1013 (5th Cir. 2006). The court interprets Powells's complaint as alleging that he was treated differently from other similarly-situated patrons at the H Bar.

"Claims of racial discrimination brought under § 1981 are governed by the same evidentiary framework applicable to claims of employment discrimination brought under Title VII." *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 n.2 (5th Cir. 1996). As a result, Section 1981 claims of racial discrimination based on circumstantial evidence are governed by the three-step burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010).

"In a commercial context, in order to establish a prima facie case under § 1981, the plaintiff must show that: (1) he or she is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities

6

enumerated in the statute." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288–89 (5th Cir. 2004). If the plaintiff successfully makes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its conduct. *Hager v. Brinker Tex., Inc.*, 102 F.4th 692, 701 (5th Cir. 2024). If the defendant articulates such a reason, the plaintiff must "create a genuine dispute of material fact with [the defendant's] posited non-discriminatory reason" to survive summary judgment. *Id*. at 704.

Post Oak argues that Powells cannot make a prima facie showing of discrimination under § 1981. The parties do not dispute that Powells is a member of a racial minority. The question is whether the record gives rise to a genuine factual dispute material to determining whether Post Oak intended to discriminate against Powells based on his race, and whether the discrimination impaired the formation of an contractual relationship.

Post Oak asserts that Powells's claim fails as a matter of law because he cannot point to direct or circumstantial evidence of discrimination. (Docket Entry No. 32 at 21). Post Oak asserts that the summary judgment evidence establishes that all the comments made to Powells during his time at the H-Bar "relate to his non-compliance with the dress code or non-compliance with the Post Oak's property guidelines." (Docket Entry No. 32 at 22). Post Oak argues that "comments that do not relate to a plaintiff's race are not evidence of discrimination and cannot defeat summary judgment." (*Id*.).

Powells responds that Post Oak's dress code policy "leaves its 'strict enforcement' to management's discretion.'" (Docket Entry No. 45 at 4). He claims that, in this case, "the discretion led to Mr. Powells – the only African American in the bar – being singled out and asked to leave, while white patrons in more questionable attire were not subject to such treatment." (*Id*.). He asserts that the summary judgment evidence shows that employees were trained to "consider the

7

'totality of the outfit,' which would indicate selective enforcement" that could be used in a discriminatory manner. (*Id*. at 6).

The record evidence cannot "be interpreted as an acknowledgment of discriminatory intent by the defendant or its agents." *Edwards v. Galveston-Texas City Pilots*, 203 F. Supp. 2d 759 (S.D. Tex. 2002). Powells cites no direct record evidence supporting an inference that Post Oak's staff enforced the no-baseball-cap policy against Powells because he was Black. *Compare Hager,* 102 F.4th at 698 (5th Cir. 2024) (finding direct evidence of discrimination when a hostess who refused to seat a Black customer and her family later stated, "I apologize for discriminating against you.").

Nor is there circumstantial evidence that Post Oak intentionally discriminated against Powells because of his race. The fact that the dress code left some discretion to employees tasked to enforce it is not sufficient to find discriminatory intent. *Cf. Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 355 (2011) (allowing discretion by local supervisors "is also a very common and presumptively reasonable way of doing business—one that we have said 'should itself raise no inference of discriminatory conduct'") (quoting reference omitted). Discriminatory intent can be established circumstantially when "the evidence shows treatment of a person in a manner which but-for that person's protected characteristic would be different." *Abdallah*, 83 F.4th at 1014. Put another way, "[t]he test is whether the outcome would be different but for the protected class: [t]hat can be shown by comparing the experience of the plaintiff to what his treatment would have been but for the protected class or by comparing the experience of the plaintiff to another individual without the protected class. If either leads to a different outcome, disparate treatment has occurred." *Id*. at 1015.

8

Powells asserts that the fact that "[i]nside the hotel and inside of H Bar, there were Caucasian people wearing hats and were neither asked to remove their hats nor leave" is circumstantial evidence of discriminatory intent. (Docket Entry No. 45-1 at 34:18-19). But Powells points to no evidence of a similarly situated comparator — a non-Black individual wearing a baseball cap or a cap of similar style who was not asked to take off the cap or leave. Instead, the summary judgment evidence shows that the only non-Black individuals wearing hats were wearing cowboy hats, which under the Post Oak dress code was an acceptable form of headwear for the five-star restaurant and bar. (Docket Entry No. 35 at 2-4).

In Texas, cowboy hats are often made of expensive materials, including felt consisting of fur and wool, and are hand-tooled and decorated. Such hats are fashion accessories, not work clothes. Cowboy hats are often considered suitable for business, semi-formal attire, or even formal attire, and are often seen at business meetings in offices, conference rooms, courthouses, at upscale restaurants and bars, and at social events and gatherings ranging from impromptu gatherings in homes or restaurants and bars to elaborately decorated ballrooms. Baseball caps are fabric caps with bills worn primarily by while playing a game or to demonstrate loyalty to a particular team. Baseball caps and cowboy hats share the function of keeping sun from the wearer's head and out of the eyes, but that function is irrelevant for the indoor use at issue here. The hotel dress code simply reflects that the two types of headgear are widely regarded as different in Texas, where the H-Bar is located.

The summary judgment record reflects that Post Oak's employees received training on this distinction. Post Oak's training slides for employees explicitly categorizes cowboy hats and fedoras as acceptable "hats," while beanies, caps, and bucket hats were characterized as unacceptable "headwear." (Docket Entry No 36-1 at 12).

9



The individuals that the record show were present with Powells at the H-Bar on the same evening are not comparators for the purpose of raising an inference that Powells's race was the but-for cause of the Post Oak's actions. *Compare Williams v. Thant Co.*, 2004 WL 1397554 (D. Or. June 22, 2004) (denying summary judgment on a record that "show[ed] that defendants allowed non-African Americans into the club even though they were wearing pants at least as baggy as those worn by plaintiffs."). Here, none of the other patrons wore baseball caps. None was dressed (at least above the neck) like Powell.

Nor does Powells present evidence that Post Oak's legitimate, non-discriminatory reason for asking him to take his hat off—the dress code that he was violating—was pretextual. In *Dunaway*, the Fifth Circuit found that the plaintiffs had created a genuine factual dispute material to determining whether the defendant's selective enforcement of a dress code policy was discriminatory and pretextual. In that case, the plaintiffs produced deposition testimony from multiple African-American individuals who were forced to leave a nightclub for the following range of reasons: "(1) pants that were too baggy; (2) shorts that were too long or too baggy; (3) shirt tails untucked; (4) logos on clothing; (5) clothes were too 'urban'; (6) standing too close to

the bar; (7) standing too close to or standing on the dance floor without dancing; (8) sitting on the speaker; and (9) involved in or trying to break up an argument or altercation." *Dunaway v. Cowboys Nightlife, Inc.*, 436 Fed. Appx. 386, 394 (5th Cir. 2011). Those same individuals testified that "they were given no real explanation by security personnel for being turned away at the door or removed from the club, that they were not permitted to remedy their alleged policy violation, or that even after remedying the violation by changing clothes, they still were not permitted to enter." *Id*. By contrast to the plaintiffs in *Dunaway*, who were told to leave regardless of whether they fixed their noncompliance with the dress code, Powells refused to take his hat off in order to remain in the H-Bar. He was given an opportunity to comply with the dress code simply by removing his baseball cap. He declined. Powells has not shown that the Post Oak's policy was pretextual.

Powells alleges that but-for his race, he would have been permitted to order drinks and food at the H-Bar; but the record reflects only that but-for his insistence on wearing a ball cap that violated the H-Bar's generally applicable dress code, he would have been permitted to order drinks and food. His claim that racial discrimination blocked the formation of a contractual relationship between himself and the Post Oak fails as a matter of law.

V.      **Conclusion**

The motion for summary judgment, (Docket Entry No. 32), is granted. Mr. Powells's claims are dismissed. Final judgment will be separately entered.

SIGNED on January 27, 2025, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge